IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT MUIR WADE, | : Civil Action No. |
| | : |
| Plaintiff | : |
| | :Electronically Filed |
| v. | : |
| | : |
| MONROE COUNTY DISTRICT ATTORNEY; | :Jury Trial Demanded |
| COMMONWEATLH OF PENNSYLVANIA; | : |
| and  E. DAVID CHRISTINE, DISTRICT | : |
| ATTORNEY, MONROE COUNTY | : |

CIVIL COMPLAINT

NOW COMES Plaintiff Robert Muir Wade, by his counsel, and files this complaint, averring as follows:

THE PARTIES

1. PLAINTIFF, Robert Muir Wade, is an individual who is presently serving a term of incarceration of life without parole following conviction in the Court of Common Pleas of Monroe County on July 18, 2000 for first degree murder and abuse of a corpse. Mr. Wade is currently in the custody of the Pennsylvania Department of Corrections.

2. DEFENDANT the Monroe County District Attorney's Office maintains a physical presence at the Monroe County Courthouse, Stroudsburg, PA 18360.  The Monroe County District Attorney's Office has possession of DNA evidence relating to Plaintiff's crimes of conviction.

3. DEFENDANT Commonwealth of Pennsylvania is responsible for enacting legislation that governs the maintenance and disclosure of DNA evidence related to criminal Prosecutions.  The

Commonwealth maintains a physical presence at Capitol Building, 501 N. 3rd Street, Harrisburg, PA 17120.

4. DEFENDANT E. David Christine, is the District Attorney for Monroe County, Pennsylvania. As the District Attorney, Mr. Christine is responsible for criminal prosecutions in Monroe County and for formulating policy regarding access to evidence in the possession and control of his office, and of the law enforcement agency with which Mr. Christine works in connection with the prosecution of crimes. Mr. Christine is sued in his official capacity. His official address is Office of the District Attorney, Monroe County Courthouse, Stroudsburg, PA.18360

## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction pursuant to 42 U.C.S. § 1983, and 28 U.S.C. §§1343 and 1331. A defendant may use a §1983 claim to request access to evidence for post conviction DNA testing. ***Grier v. Klem,*** 591 F3d 672, 2010 U.S. App. LEXIS 696 (3d Cir. 2010). Access to the evidence for post conviction DNA testing is the relief sought by Mr. Wade.

6. Venue lies within the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. 1391(a), with all of the events giving rise to the claim having occurred therein.

## BACKGROUND

## THE INCIDENT

7. On December 2, 1996, the body of Lekitha Council was discovered by hunters partially enveloped in a garbage bag in a rural area of Pocono Township, Monroe County, Pennsylvania. [N.T. Volume I, 37-39]. Dr. Isadora Mihalakis, an expert in forensic pathology, conducted the autopsy and concluded that Ms. Council was a victim of homicide by manual strangulation or

suffocation. [Id. 97]. Dr. Mihalakis testified that Ms. Council had been dead for 3-5 days at the outside. Robert Muir Wade was charged with the murder.

8. At trial, the Commonwealth produced no direct evidence tying Mr. Wade to the crime. The Commonwealth did not prove how, when or where Ms. Council was killed. The Commonwealth did not produce evidence indicating Ms. Council was killed in Pennsylvania. Instead, the Commonwealth introduced a web of circumstantial evidence beginning with the fact that Ms. Council was last seen alive in New Jersey sometime around 5:00 p.m. on November 26, 1996, and her body was found in Pennsylvania on December 2, 1996.

9. Although Mr. Wade claimed that he last saw Ms. Council on the morning of November 26, 1996, when he gave her a ride to work, evidence presented at trial conflicted with his account. The Commonwealth introduced a Pathmark store receipt dated <u>November 26, 1996, at 1:25 p.m</u>. which allegedly was found in the trunk of Mr. Wade's vehicle. The receipt showed that Ms. Council had cashed her paycheck and used some of the money to make some purchases. Several items including Snapple and pretzels were found in the trunk. The Commonwealth also introduced a timed video of Ms. Council that matched the store receipt. The store video showed that Ms. Council was wearing the same clothes she was wearing when her body was discovered on December 2, 1996.

10. Evidence was introduced that Ms. Council was last seen <u>alive at 5 p.m. on November 26th</u>. She was observed by co-workers leaving her place of employment in Montclair, New Jersey on that date and time. Phone records showed that Ms. Council made a call from her place of employment at around 5 p.m. on November 26th. After Ms. Council made the purchases at the Pathmark in Montclair, she returned to work. The plastic bag with the receipt found in the trunk

3

of Mr. Wade's car could have been placed there sometime <u>before</u> Ms. Council returned to her place of employment on November 26, 1996 or, using her own key to the automobile, while Mr. Wade was at work.

11. Through phone records from Ms. Council's place of employment and testimony from Ms. Council's mother, Marguerite Council, evidence was produced indicating Ms. Council intended to meet Mr. Wade after work on November 26, 1996 to shop for a vehicle for herself. Along with the receipt, blood was found in the back seat of Mr. Wade's car.

12. When Lekitha Council was missing, her mother testified she believed that she was with a boyfriend (Hubert Frank, a married man), not Mr. Wade, and that Lekitha and Mr. Frank had gone to South Carolina together for the Thanksgiving holiday. Lekitha Council made several phone calls to Mr. Frank on November 26$^{th,}$ including two calls shortly before she left her place of work at around 5 p.m.

12. The autopsy revealed that Ms. Council bled from the nose, and that there was blood around her mouth and on the top of the turtleneck. Dr. Sarah Kucherer, the forensic scientist who performed DNA profiling on the blood, testified that the blood found in the back seat of Mr. Wade's car matched Ms. Council's blood to within one in 207,000 in the African-American population. She was not able to say when the blood was deposited in the car. Notably, other blood found in the car did not match Ms. Council's.

13. The Commonwealth established that Ms. Council's remains were found in an institutional trash bag not usually sold in the consumer marketplace. In particular, the trash bag was sealed along the length during construction and the bottom of the bag was extremely uncommon in the

trash bag industry. When the police searched Mr. Wade's residence, they found a box of trash bags identical to the unusual bag in which the remains were found.

14. Two experts in bag manufacturing compared the trash bag containing the remains with the trash bags found in Mr. Wade's residence. One of the experts, Frank Ruiz, testified that the trash bag containing the remains and the trash bags found in the house were made by the same company within the same 8 hour run.

15. Evidence was introduced that Mr. Wade was familiar with the area in which the body was found. Specifically, the Commonwealth established that Mr. Wade had stayed at the Caesar's Brookdale, which was within a few miles of where the body was found.

16. Evidence was produced showing the body was found near Route 314, and that Dyson Road directly linked Caesar's Brookdale to Route 314. Dyson Road is located 30-40 yards south of where the body was found.

17. Evidence was introduced establishing a time frame that would have given Mr. Wade the opportunity to kill Ms. Council, and dump her body.

18. Testimony was introduced establishing that Mr. Wade regularly picked up Ms. Council, and drove her to work but on Wednesday, November 27, 1996, Mr. Wade did not appear to give Ms. Council a ride to work. Mrs. Council testified that considering the nature and length of the relationship between Mr. Wade and Ms. Council, she considered it "strange" that when informed of Ms. Council's death, Mr. Wade did not ask for any details. Mr. Wade and Ms. Council had known each other for six years. During that time, they lived together and had sexual relations that extended to at least September, 1996, or two months before Ms. Council's death.

19. Contrary to the Commonwealth's circumstantial evidence, the defense established that Ms. Council had a key to Wade's car

20. Security cameras did not reveal that Mr. Wade left work early. According to the time clock kept by Cunningham Graphics where Mr. Wade worked full-time, Mr. Wade punched in at 3:00 p.m. and punched out at 11:00 p.m. on November 26th and punched in at 3:00 and out at 11:32 p.m. on November 27th. Employment records indicate that Mr. Wade was at work at 3P.M. on November 26th when Ms. Council was last seen alive at her place of business at 5p.m. and he remained there until 11:32 p.m. and was back to work at 3p.m. the following day.

21. The defense introduced a credit card receipt indicating that Mr. Wade purchased gas at 1:40 p.m. on November 26, 1996 in Plainfield, New Jersey.

22. The evidence also showed that Ms. Council lived with Mr. Wade and had the same access to the trash bags as Mr. Wade.

23. During the closing argument, the prosecutor stated, **"I can't stand here and say to you we know that Lekitha Council died on a date certain, at a time certain, at a place certain. We simply can't do this."**.

THE DNA EVIDENCE

24. The autopsy report at page 4 says that "nails are clipped before the clothing is removed " and at page p. 19 says " fingerprints and fingernails are surrendered to the police".

25. The Report from Pennsylvania State Police Bureau of Forensic Services, Greensburg Regional Laboratory dated March 24, 1997 indicates that neither the fingernails of the victim nor any scrapings from the fingernails were subjected to DNA testing.

26. Pennsylvania State Police Bureau of Forensic Services, Wyoming Regional Laboratory, Report Number W96-3550-S dated January 25, 1997 identifies item 15 as "nail clippings from right hand of victim" and item 16 as "nail clippings from left hand of victim." The "Results" section of the Report indicates: "6. Nothing of probative value was found in items 13, 14 and 15". The "Results" section of the Report does not indicate that any DNA testing was done on items 15 and 16. In fact, the "Results" section of the Report indicates that no testing, whatsoever, was done on item 16 (nail clippings from left hand of victim"). The trial record does not show any request for testing of Exhibits 15 and 16 (fingernails of victim) by defense counsel.

27. The police took possession of the clothing of the victim, but there was no DNA testing of the blood on the victim's sweater.

28. The autopsy report also indicates that the victim may have been re-dressed by the perpetrator as the sweater was put on backwards, and her pantyhose were pulled down to her shoes. She was wearing a lavender leather coat. The trial record does not show any request for testing of the sweater, coat, pantyhose ,shoes, bra or underpants by defense counsel.

29. Forensic Analytical Laboratory Report in Matter of (S) Robert Wade, dated 5/09/1998 and (Lab Report W96-3398-S) indicate that the black garbage bag in which the body of the victim was found was not subjected to DNA testing.

30. The FBI Lab Report dated March 14, 1997 indicates that four latent fingerprints and four palm prints were found on the trash bag which partially covered the body of the victim. The FBI Report dated March 14, 1997 states that that the fingerprints did not match those of Mr. Wade.

The report also said that there were no palm prints available for Mr. Wade. Trial counsel did not request DNA testing of the bag at the time of trial.

31. At oral argument held on March 22, 2012 on Plaintiff's Motion Pursuant to 42 PA. C.S. § 9543.1 for Post Conviction DNA testing, the Court and the parties were advised that at least some of the items are available for DNA testing.

## PLAINTIFF IS CHARGED, TRIED AND CONVICTED OF THE CRIMES DESPITE HIS CLAIM OF ACTUAL INNOCENCE

32. The Commonwealth accused Mr. Wade of first degree murder, 18 PA.C.S.A. 2502(a) and abuse of a corpse 18 PA. C.S.A. 5510. He pled not guilty and continues to maintain his innocence.

33. Mr. Wade's trial counsel did not request DNA testing of the numerous pieces of evidence found at the crime scene.

34. The evidence against Mr. Wade was entirely circumstantial.

35. Neither party tested the many of the items found at the crime scene. The fingerprint evidence excluded Mr. Wade.

36. Mr. Wade was convicted on both counts on April 3, 2000.

PLAINTIFF PURSUED POST-CONVICTION RELIEF AND DIRECT APPEAL.

37. On July 18, 2000, Mr. Wade was sentenced to mandatory life for First Degree Murder, and a concurrent term of 1-2 years' imprisonment for Abuse of Corpse. [RR140]

38. On July 27, 2000, Mr. Wade filed a motion in arrest of judgment and a motion for a new trial. [RR140]

39. On October 12, 2002, the Superior Court affirmed. ***Commonwealth v. Wade***, 3406 EDA 2000, 790 A2d 344 (PA Super. 2001). [RR140]. On appeal, Mr. Wade presented the following issues: (1) the evidence was insufficient to sustain the verdicts; (2) the verdict was against the weight of the evidence; (3) ineffective assistance of counsel for failing to object to the admission of the testimony of Frank A. Ruiz, and Adebayo Bancola on the grounds that the testimony was based on junk science; (4) the motions to suppress physical evidence and statements should have been granted; (5) trial counsel was constitutionally ineffective for failing to object to the prosecution's closing argument that the jury should ignore the pathologist's estimate of time of death.

40. Appellate counsel did not file a timely petition for allowance of appeal. Appellate counsel simply abandoned Mr. Wade.

41. On August 29, 2002, Mr. Wade filed a motion for leave to file a petition for allowance of appeal nunc pro tunc. On December 16, 2002, the PA Supreme Court denied the request.

42. On June 9, 2003, Mr. Wade filed a counseled petition for habeas corpus with the United States District Court, Middle District of Pennsylvania. The petition was denied December 2, 2004. On November 30, 2006 the United States Court of Appeals for the Third Circuit denied an application for certificate of appealability.

43. On August 23, 2004, Mr. Wade filed a pro-se petition for post conviction relief under the Pennsylvania Post Conviction Relief Act ["PCRA"]. [RR91] Counsel was appointed to represent Mr. Wade. Oral argument was held December 17, 2004. The PCRA petition alleged the prosecution suppressed evidence material to the defense. Specifically, the PCRA petition alleged the prosecution failed to disclose that some of the blood evidence found in Mr. Wade's car was

of unknown origin. The PCRA petition also claimed ineffective assistance of counsel for failing to have the blood tested.

44. On February 7, 2005, the PCRA petition was dismissed as "untimely." On August 22, 2005, the Superior Court affirmed. *Commonwealth v. Wade*, 586 EDA 2005, 885 A2d 587 (PA Super. 2005)

45. On September 9, 2005, Mr. Wade submitted a pro-se Motion for Post-Conviction DNA Testing and Preservation of Certain Evidence. The Court ordered that the pro-se motion be forwarded to counsel for Mr. Wade.

46. On May 8, 2006, Mr. Wade filed a second PCRA petition requesting DNA testing. On May 9, 2006, the Common Pleas Court judge dismissed it as "untimely." While his appeal was pending, on June 12, 2006, Mr. Wade resubmitted his motion for DNA testing.

47. On November 9, 2006, the Superior Court affirmed the denial of Mr. Wade's second PCRA petition. *Commonwealth v. Wade,* 915 A2d 152 (PA. Super, 2006) (unpublished) [RR92]

48. On December 4, 2006, the trial judge filed a notice of disposition without a hearing stating that Mr. Wade was not entitled to DNA testing.

> Mr. Wade requested DNA testing of the following items:
>
> Blood stains collected from appellant's vehicle;
>
> Any semen found on the victim;
>
> Finger and palm print analysis of latent prints on the garbage bag in which the victim's body was found;
>
> hairs found on the passenger side floor mats that were microscopically compared to the victim's hair and found to be similar;

> hairs found on the driver's side rear floor, and
>
> other hairs found in the vehicle which were not suitable for comparison. [RR, p. 97].

49. On December 27, 2006, the trial court filed an Opinion and Order denying the motion for post conviction DNA testing and other outstanding motions.

50. On December 10, 2007, the Superior Court affirmed. The Superior Court did not reach the question of whether Mr. Wade's Motion for Post-Conviction DNA testing was timely filed. Instead, the Superior Court affirmed the denial of the motion because it concluded that the DNA testing of the items identified in the Motion would not have established Mr. Wade's actual innocence.

51. According to the PCRA court's opinion filed June 12, 2012, Mr. Wade filed a second pro-se motion for Post-Conviction DNA testing and Preservation of Certain Evidence on December 27, 2006. The Motion was denied by Order dated January 2, 2007. The Superior Court affirmed the denial of the request for DNA testing on December 10, 2007.

52. On December 9, 2011, Mr. Wade filed his third Motion for Post-Conviction DNA testing wherein he requested DNA testing of the following items:

> 1. The fingernails of the victim and any scrapings from those fingernails;
>
> 2. the yellow turtle neck sweater worn by the victim and which had a blood stain at the neck and on the body of the sweater; lavender leather coat, bra, underpants, pantyhose and shoes of the victim;
>
> 3. trash bag in which the body of the victim was found;

11

    4. the contents of the lavender coat of the victim..

53. On March 21, 2012, Wade filed a Supplemental Motion on March 21, 2012, wherein he requested that the items enumerated above be subjected to the new technology of "Touch" DNA testing.

54. On March 22, 2012, the PCRA Court heard argument on the motion and supplemental motion .

55. On April 19, 2012, Mr. Wade filed a Supplemental Memorandum of Law in Support of the Motion(s). In the Supplemental Memorandum, Mr. Wade requested that the DNA testing be done at the Commonwealth's expense and that the results of the DNA testing be sent for inclusion in CODIS[1] for comparison with that data base and should be loaded into the Pennsylvania and Federal DNA data bases for testing.

56. On May 10, 2012, the Commonwealth filed a response opposing the Petition for Post-Conviction DNA testing.

57. On May 17, 2012, Wade filed a Response to the Commonwealth's Opposition.

58. On June 15, 2012, the PCRA Court entered an order denying Mr. Wade's third petition for DNA testing and Supplemental Motion for Touch DNA Testing and filed an Opinion.

59. On March 20, 2013, the Superior Court affirmed.

---

[1] "CODIA" is a computer software program that operates local, state and national databases of DNA profiles from convicted offenders, unsolved crime evidence and missing persons. [RR197]

60. On November 11, 2013, the Pennsylvania Supreme Court denied Mr. Wade's petition for allowance of appeal.

61. Plaintiff has not further recourse in State courts. Having already filed multiple PCRA petitions and a Motion for Post-Conviction DNA testing, he would be able to bring a successive PCRA petition in Pennsylvania courts only if he were to first gain access to the physical evidence in Defendant's possession for testing of that evidence and the testing of that evidence was to exonerate him. "It is well-settled that a second or subsequent post-conviction petition for relief will not be entertained 'unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred." *Commonwealth v. Kenney,* 732 A.2d 1161, 1166 (PA. 1999); *Commonwealth v. Beasley,* 967 A2d 376 (2009). Mr. Wade would be subject to this stringent procedural bar, and the allegation that the Defendants possess evidence that might be exculpatory alone, has not met and likely will not meet that high standard.

## COUNT 1: VIOLATION OF PROCEDURAL DUE PROCESS

62. Mr. Wade incorporates by reference paragraphs 1 through 61 of this Complaint as set forth fully herein.

63. Mr. Wade has alleged and continues to allege that his conviction is based solely on circumstantial evidence and that he is actually innocent of the crimes. He has consistently maintained his innocence.

64. The Commonwealth of Pennsylvania provides a post-conviction process for prisoners to challenge their convictions or demonstrate their innocence.

13

65. Since the mid – 1990's , the Commonwealth has provided a judicial mechanism to access physical evidence in the Commonwealth's possession for DNA testing as an acknowledgement of the necessity for meaningful access to post-conviction process and of the unique potential for DNA evidence to exonerate the innocent who have been wrongly convicted.

66. Mr. Wade pursued of all of the judicial mechanisms available to him at the time he filed his PCRA petitions and Motion for Post-Conviction DNA testing through which he sought access to the physical evidence in Defendants' possession in order to prove his innocence.

67. At every step, Mr. Wade was denied access to that physical evidence even though he has consistently maintained his innocence.

68. Mr. Wade has been denied access in large part because his attorney did not make a request for DNA testing at the time of trial, even though improved DNA testing could now detect what was undetectable at the time of trial. This bar denies Mr. Wade procedural due process and denies him a reasonable opportunity to prove his innocence. It offends fundamental principles of justice.

COUNT II: DENIAL OF RIGHT TO MEANINGFUL ACCESS TO COURTS

69. Mr. Wade incorporates by reference paragraphs 1 through 68 of this Complaint as set forth fully herein.

70. Mr. Wade alleges he is innocent of the first degree murder and abuse of corpse of Lekitha Council and believes that post-conviction DNA testing will prove his innocence.

71. The Commonwealth provides a post-conviction process for a prisoner to challenge his conviction or demonstrate his innocence.

72. In order to provide meaningful access to post-conviction process and the inclusion of the unique potential for exoneration through DNA testing, the Commonwealth, beginning in the mid-1990's provided a judicial mechanism for prisoners to obtain DNA testing physical evidence in the Commonwealth's possession.

73. Mr. Wade would have a viable post-conviction claim if he could gain access to the evidence in the Defendant's possession. With that new evidence, he could gain access to the Pennsylvania state courts and ask for a new trial or could seek federal habeas corpus relief, if the results are exculpatory.

74. The defendant's have imposed an impermissible barrier to obtaining this evidence and have unconstitutionally impeded Mr. Wade from meaningful access to post-conviction procedures provided by Pennsylvania law.

75. Because the defendants will not release the physical evidence to Mr. Wade for DNA analysis, he is being arbitrarily denied meaningful access to state and federal courts to establish that he is actually innocent of the crimes for which he is serving a life sentence. All of this is in violation of the Petition Clause of the First Amendment of the United States Constitution and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

COUNT III: DENIAL OF OPPORTUNITY TO SHOW ACTUAL INNOCENCE

76. Mr. Wade incorporates by reference paragraphs 1 through 75 of this Complaint as set forth fully herein.

77. Defendants have denied Mr. Wade the opportunity to conclusively prove his actual innocence of the charges for which he is serving a life sentence by refusing to release the physical evidence for DNA analysis, all in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## COUNT IF: DENIAL OF RIGHTS TO CONFRONTATION AND COMPULSORY PROCESS

78. Mr. Wade incorporates by reference paragraphs 1 through 77 of the Complaint as set forth fully herein.

79. Defendants have denied Mr. Wade the right to present evidence of his actual innocence in both the state and Federal courts by refusing to release the physical evidence for DNA analysis. This arbitrary refusal prevents Mr. Wade from gaining access to the evidence which is relevant and material to his case and which would exonerate him as the person who murdered Ms. Council. The arbitrary refusal is in violation of the Confrontation and Compulsory Process Clauses of the Sixth Amendment to the United States Constitution.

## COUNT V; CRUEL AND UNUSUAL PUNISHMENT

80. Mr. Wade incorporates by reference paragraphs 1 through 79 of this Complaint as set forth fully herein.

81. The refusal by the Defendants to release the physical evidence for DNA analysis prevents Mr. Wade from accessing the evidence which would exonerate him as the perpetrator. The denial of Mr. Wade's right to present evidence of his actual innocence in State and Federal Courts is in

violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

PRAYER FOR RELIEF

Wherefore, Plaintiff Wade requests a judgment:

a. Ordering Defendants to take all steps reasonably necessary to ensure that the physical evidence taken from the victim's body including the fingernails of the victim and any scrapings from those fingernails; the yellow turtle neck sweater worn by the victim and which had a blood stain on the neck and body of the sweater; the lavender leather coat; the bra, underpants, pantyhose and shoes of the victim; the trash bag in which the body of the victim was found; the contents of the lavender coat of the victim; the inventory of the items found in the lavender coat.

b. Ordering the Defendants to produce to Plaintiff the evidence listed in paragraph(a), above.

c. Ordering the Defendants to cooperate with the Plaintiff in selecting a qualified laboratory for testing the evidence or, in the alternative, ordering the evidence to be tested at a specific, qualified laboratory chosen by the Court:

d. Reasonable attorneys fees and costs; and
e. Any other relief that this Court deems just and proper.

Dated: March 24, 20145                                Respectfully submitted,

/s/Cheryl J. Sturm
Cheryl J. Sturm
Attorney at Law
387 Ring Road
Chadds Ford, PA 19317
484-771-2000
484-771-2008(fax)
sturmcj@aol.com

17

18