## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT MUIR WADE,

      Plaintiff,

      v.

MONROE COUNTY DISTRICT
ATTORNEY, et al.,

      Defendants.

CIVIL ACTION NO. 3:15-cv-00584

(SAPORITO, M.J.)

### MEMORANDUM

This is a federal civil rights action, brought under 42 U.S.C. § 1983. The plaintiff, Robert Muir Wade, is a state prisoner incarcerated at SCI Dallas, located in Luzerne County, Pennsylvania. He is serving a sentence of life in prison without parole. Appearing through counsel, he alleges that the defendants' failure to release certain physical evidence to him for DNA testing has violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. He seeks an order from this Court directing the defendants to release this evidence for DNA testing, plus costs and attorney fees.

## I. FACTUAL BACKGROUND

We defer to the Superior Court of Pennsylvania, which has ably

summarized the facts underlying Wade's criminal conviction:

> [Wade] and the victim had known each other for approximately six years and had lived together at one point during their relationship. Although [Wade] was married, he and the victim had sexual relations until at least two months before the victim's death.
>
> As the victim did not own a vehicle, [Wade] routinely drove her to and from work. [Wade] admitted that he drove the victim to work on November 26, 1996, the day she was last seen alive. It was also confirmed that the victim made various telephone calls to [Wade] that day from her workplace. The victim had also telephoned her mother and explained that she was going to meet [Wade] after work to shop for a vehicle. Several business cards of car dealers were found in the victim's pockets. [Wade] testified that he talked to the victim at approximately 5:00 p.m., which was also the last time she was seen alive. [The victim's] body was discovered six days later, on December 2, 1996.
>
> On December 3, 1996, a search warrant was issued in New Jersey for [Wade's] automobile. During the search, the police found bloodstains on the back of the passenger seat. The autopsy revealed that the victim had bled from the nose and that there was a substantial amount of blood around her mouth and on the top of her turtleneck. The Commonwealth introduced evidence establishing that the blood found in the vehicle matched the victim's blood within 1 of 207,000 in the African-American population.
>
> In the trunk of [Wade's] automobile, the police discovered plastic shopping bags. One of these bags contained "Pathmark" brand products and a receipt from a "Pathmark" store in Montclair, New Jersey[,] dated November 26, 1996. The receipt was timed at approximately 1:25 p.m. and had the victim's name on it.

The information on the receipt was corroborated with a timed videotape depicting the victim at this store purchasing items found in the shopping bags. The victim was wearing the same clothes that she was found in when her body was discovered on December 2, 1996.

The garbage bag that the body was found in also led to evidence linking [Wade] to the crime. On December 3, 1996, [Wade's] wife consented to a search of their home. During the search, the police found clothing that belonged to the victim. [Wade's] wife gave police a garbage bag, which was identical to the bag in which the victim was found. Two days later, while executing a search of [Wade's] home on December 5, 1996, the police found a box of these particular garbage bags in the basement.

The garbage bags in this case were unusual and proved to be important circumstantial evidence. The Commonwealth presented two experts in bag manufacturing to testify about the garbage bags. Frank Ruiz, one of the experts, testified that the bag in which the body was found and the bags discovered in [Wade's] home were manufactured by the same company within the same eight hours. Tests revealed that they were institutional garbage bags, not commonly sold in the consumer market. Further, the process by which this particular garbage bag was manufactured revealed that it was extremely uncommon within the garbage bag industry.

*Commonwealth v. Wade*, No. 2041 EDA 2012, 2013 WL 11273719, at *1

(Pa. Super. Ct. Mar. 20, 2013) (unpublished opinion) (brackets omitted). In

1998, Wade was arrested and charged with the victim's murder. *Id.* at *2.

## II. PROCEDURAL HISTORY

On April 3, 2000, following a jury trial, Wade was convicted in the Court of Common Pleas of Monroe County for first-degree murder and abuse of a corpse. *Commonwealth v. Wade*, Docket No. CP-45-CR-0000639-1998 (Monroe Cty. C.C.P.). On July 18, 2000, Wade was sentenced to serve a term of mandatory life imprisonment without parole for the first-degree murder conviction and a term of 1 to 2 years imprisonment for abuse of a corpse. *Id.* His conviction and sentence were affirmed on direct appeal by the Superior Court of Pennsylvania on October 12, 2001. *Commonwealth v. Wade*, Docket No. 3406 EDA 2000 (Pa. Super. Ct.). Nearly a year later, on September 10, 2001, Wade filed a *nunc pro tunc* petition for allocatur with the Supreme Court of Pennsylvania, which was denied on December 16, 2002. *Commonwealth v. Wade*, Docket No. 208 MM 2002 (Pa.).

On June 9, 2003,[1] Wade filed a federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Wade v. Warden of SCI Rockview*, Case No. 4:03-cv-00952 (M.D. Pa. filed June 9, 2003). On December 2,

_____

[1] In his answer to the defendants' statement of facts, Wade asserts that the petition was filed on June 6, 2003. While the cover letter that accompanied the petition is dated June 6, 2003, suggesting that counsel may have mailed the petition on that date, the petition was not received and filed by the Clerk of Court until June 9, 2003.

2004, Wade's petition was denied by this Court. *Id.* Wade filed an untimely appeal to the Third Circuit, which remanded the case for this Court to determine in the first instance whether a certificate of eligibility should issue. *Id.* On February 7, 2006, this Court declined to issue a certificate of appealability. *Id.* On December 21, 2006,[2] the Third Circuit likewise denied Wade's request for a certificate of appealability. *Id.*

In the meantime, Wade filed a *pro se* PCRA petition in the state trial court on August 23, 2004. Counsel was appointed thereafter to represent Wade in the PCRA proceedings. *Commonwealth v. Wade*, Docket No. CP-45-CR-0000639-1998 (Monroe Cty. C.C.P.). On February 7, 2005, the PCRA court denied Wade's PCRA petition as untimely filed. *Id.* The denial of this first PCRA petition was affirmed on appeal by the Superior Court on August 22, 2005. *Commonwealth v. Wade*, 885 A.2d 587 (Pa. Super. Ct. 2005) (table decision) (No. 586 EDA 2005).

On or about September 1, 2005, Wade submitted a *pro se* motion for

---

[2] For reasons that are unclear, the defendants' statement of facts states that the Third Circuit denied the certificate of appealability on November 30, 2006, and the plaintiff's answer to the defendants' statement of facts states that the denial of a certificate of appealability occurred on August 8, 2006. The Third Circuit's final order denying a certificate of appealability, however, is dated December 21, 2006.

post-conviction DNA testing for filing in the state trial court. *Commonwealth v. Wade*, Docket No. CP-45-CR-0000639-1998 (Monroe Cty. C.C.P.). Because he was represented by counsel of record, the trial court forwarded the motion to his attorney without docketing or recording it, as required under state rules of civil procedure. *Id.*

On or about May 8, 2006, Wade filed a second *pro se* PCRA petition, which was denied by the PCRA court on May 9, 2006, as having been previously litigated, and therefore barred from further review. *Id.* The denial of this second PCRA petition was affirmed on appeal by the Superior Court on November 9, 2006. *Commonwealth v. Wade*, 915 A.2d 152 (Pa. Super. Ct. 2006) (table decision) (No. 1372 EDA 2006).

On or about June 12, 2006, Wade filed a second *pro se* motion for post-conviction DNA testing. *Commonwealth v. Wade*, Docket No. CP-45-CR-0000639-1998 (Monroe Cty. C.C.P.). In this motion, Wade sought testing of the following evidence: (1) blood stains collected from Wade's vehicle; (2) any semen found on the victim; (3) finger and palm print analysis of latent prints on the garbage bag in which the victim's body was found; (4) hairs found on the passenger-side floor mats that were microscopically compared to the victim's hair and found to be similar; (5)

- 6 -

hairs found on the driver-side rear floor; and (6) other hairs found in the vehicle that were not suitable for comparison. (Doc. 23, at 3; Doc. 23-2, at 104). On December 4, 2006, the state trial court notified Wade of its intention to deny the petition on multiple grounds. *Commonwealth v. Wade*, Docket No. CP-45-CR-0000639-1998 (Monroe Cty. C.C.P.). On December 27, 2006, the state trial court denied the motion for the stated reasons that Wade failed to meet the requirements for post-conviction DNA testing of evidence that was available prior to trial, and that there was no reasonable probability that testing would produce favorable results that would establish his actual innocence of the offense for which he was convicted. (Doc. 23-2, at 105). The denial of this second motion for DNA testing was affirmed on appeal by the Superior Court on December 10, 2007. *Commonwealth v. Wade*, 945 A.2d 771 (Pa. Super. Ct. 2007) (table decision) (No. 190 EDA 2007). In particular, the Superior Court agreed with the trial court that the requested DNA testing, regardless of its results, would not have demonstrated Wade's actual innocence. (Doc. 23-2, at 105–06 & n.10). Four months later, on or about April 2, 2008, Wade filed a *nunc pro tunc* petition for allocatur with the Supreme Court of Pennsylvania, which was denied on September 2, 2008. *Commonwealth v.*

*Wade*, Docket No. 80 MM 2008 (Pa.).

On December 9, 2011, Wade filed his third motion for post-conviction DNA testing, this time appearing through counsel. *Commonwealth v. Wade*, Docket No. CP-45-CR-0000639-1998 (Monroe Cty. C.C.P.). This third motion sought additional testing not requested in the second motion for DNA testing, including the following evidence: (1) the fingernails of the victim and any scrapings from those fingernails; (2) the victim's yellow turtleneck sweater, which had blood stains on it; (3) the victim's leather coat, bra, underpants, pantyhose, and shoes; (4) the trash bag in which the victim's body was found;[3] and (5) the contents of the victim's coat, which were removed and inventoried by police investigators. (Doc. 21, at 3–4; Doc. 23, at 4; Doc. 23-2, at 45 & nn.1–4). On March 21, 2012, Wade filed a supplement to his third motion for DNA testing, requesting that these same pieces of evidence be tested for "touch DNA," using new testing technologies not previously available. (Doc. 23-2, .at 109–11 & nn.1–4). On June 15, 2012, the state trial court denied the motion. *Commonwealth v. Wade*, Docket No. CP-45-CR-0000639-1998 (Monroe Cty. C.C.P.). In

---

[3] While the second motion requested forensic analysis of the trash bag, it did not request DNA testing.

denying his motion, the trial court considered the evidence presented at trial and the particular testing requested, and it found that there was no reasonable probability that testing would produce favorable results that would establish his actual innocence of the offense for which he was convicted. (Doc. 23-2, at 12–15). The denial of this third motion for DNA testing was affirmed on appeal by the Superior Court on March 20, 2013. *Commonwealth v. Wade*, 69 A.3d 1297 (Pa. Super. Ct. 2013) (table decision); *Commonwealth v. Wade*, No. 2041 EDA 2012, 2013 WL 11273719 (Pa. Super. Ct. Mar. 20, 2013) (unpublished opinion). In affirming the trial court decision, the Superior Court found that, in light of the evidence presented at trial,

> even assuming DNA testing would reveal DNA from someone other than [Wade] or the victim on the multiple items [Wade] seeks to have tested, [Wade] does not demonstrate it is more likely than not that no reasonable juror confronted with the DNA and other evidence would find [Wade] guilty beyond a reasonable doubt.

*Wade*, 2013 WL 11273719, at *3. Wade filed a timely petition for allocatur with the Supreme Court of Pennsylvania, which was denied on November 15, 2013. *Commonwealth v. Wade*, 80 A.3d 777 (Pa. 2013) (table decision) (No. 277 MAL 2013).

    Appearing through counsel, Wade filed his original complaint in this

- 9 -

action on March 24, 2015. (Doc. 1). The original complaint named three defendants: (a) the Monroe County District Attorney's Office; (b) the Commonwealth of Pennsylvania; and (c) E. David Christine, District Attorney for Monroe County, sued in his official capacity only. (*Id.*). Wade seeks injunctive relief only. (*Id.*).

On April 18, 2015, the defendants filed their answer to the complaint. (Doc. 6). On August 5, 2015, Wade moved for leave to amend his complaint to eliminate the Commonwealth of Pennsylvania as a defendant to the action based on its immunity from suit under the Eleventh Amendment to the United States Constitution. (Doc. 7). On August 10, 2015, the Court granted Wade's motion, and the Commonwealth was terminated as a defendant to this action. (Doc. 9).

On October 14, 2016, following the exchange of discovery, the remaining defendants filed a motion for summary judgment, together with a statement of material facts and a brief in support. (Doc. 20; Doc. 21; Doc. 22). On November 4, 2016, Wade filed his answer to the statement of facts, together with several documentary exhibits and a brief in opposition to summary judgment. (Doc. 23; Doc. 24). The motion is ripe for disposition.

## III. LEGAL STANDARD

### A. Rule 12(b)(1) Standard

The plaintiff bears the burden of establishing the existence of subject matter jurisdiction under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono*

*Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

### B. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

## C. *Sua Sponte* Dismissal Standard

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). *See generally Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards). "The court's obligation to dismiss a complaint under [this] screening provision[] is not excused even after defendants have filed a motion to

dismiss." *Id.* at 589. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

- 14 -

## IV. DISCUSSION

The complaint contains five separate counts, all brought pursuant to 28 U.S.C. § 1983. In Count I, Wade claims that the defendants' refusal to release physical evidence from his criminal case to him for DNA testing was a violation of his procedural due process rights under the Fourteenth Amendment. In Count II, Wade claims that the defendants' refusal to release the physical evidence to him for DNA analysis was a violation of his right to meaningful access to the courts under the First and Fourteenth Amendments. In Count III, Wade claims that—in refusing to release the physical evidence to him for DNA analysis—the defendants have denied him an opportunity to conclusively prove his actual innocence of the offenses for which he was convicted, a violation of his substantive due process rights under the Fourteenth Amendment. In Count IV, Wade claims that the defendants' refusal to release the physical evidence to him for DNA analysis violated his rights under the Confrontation and Compulsory Process Clauses of the Sixth Amendment. In Count V, Wade claims that the defendants' refusal to release the physical evidence to him for DNA analysis constituted cruel and unusual punishment in violation of his rights under the Eighth Amendment.

In their motion for summary judgment, the defendants have interposed a jurisdictional defense and several affirmative defenses to the plaintiff's claims. They have not addressed the plaintiff's claims on the merits. First, the defendants argue that this Court lacks subject matter jurisdiction in this action under the *Rooker-Feldman* doctrine. Second, the defendants argue that Wade's claims are barred by the two-year statute of limitations applicable to § 1983 actions. Third, the defendants argue that they are entitled to absolute prosecutorial immunity. Fourth, the defendants argue that Wade's claims are barred by qualified immunity. Fifth, the defendants argue that Wade's claims are partially barred by the favorable termination rule articulated by the Supreme Court of the United States in *Heck v. Humphrey*, 51 U.S. 477 (1994).

## A. *Rooker-Feldman* Doctrine

The defendants argue that this action must be dismissed because this Court lacks subject matter jurisdiction over it under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine provides that federal district courts lack subject matter jurisdiction to sit in direct review of state court decisions. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It precludes a federal action if the relief

requested in the federal action effectively would reverse the state decision or void its ruling. *FOCUS v. Allegheny Cty. Ct. Com. Pl.*, 75 F.3d 834, 840 (3d Cir. 1996). "[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (quoting *Exxon Mobil*, 544 U.S. at 284).

In *Skinner v. Switzer*, 562 U.S. 521 (2011), the Supreme Court of the United States addressed the fourth requirement—whether the plaintiff is inviting the district court to review and reject the state court's judgment. *See id.* at 532. The plaintiff in *Skinner*

> stated his due process claim in a paragraph alleging that the State's refusal "to release the biological evidence for testing . . . has deprived [him] of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence . . . ."

*Id.* at 530 (quoting plaintiff's complaint) (alterations in original). At oral argument,

- 17 -

> Skinner's counsel clarified the gist of Skinner's due process claim: He does not challenge the prosecutor's conduct or the decisions reached by the [state court] in applying [state law] to his motions; instead, he challenges, as denying him procedural due process, [the state's] postconviction DNA statute "as construed" by the [state] courts. . . . [State] courts, Skinner's counsel argued, have "construed the statute to completely foreclose any prisoner who could have sought DNA testing prior to trial, but did not, from seeking testing" postconviction . . . .

*Id.* (brackets omitted).

Under these circumstances, the Supreme Court concluded that:

> Skinner's litigation, in light of *Exxon*, encounters no *Rooker-Feldman* shoal. "If a federal plaintiff 'present[s] [an] independent claim,'" it is not an impediment to the exercise of federal jurisdiction that the "same or a related question" was earlier aired between the parties in state court. . . . Skinner does not challenge the adverse [state court] decisions themselves; instead, he targets as unconstitutional the [state] statute they authoritatively construed. As the Court explained in *Feldman*, and reiterated in *Exxon*, a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action. Skinner's federal case falls within the latter category. There was, therefore, no lack of subject-matter jurisdiction over Skinner's federal suit.

*Id.* at 532–33 (citations and footnotes omitted).

With respect to the *Rooker-Feldman* doctrine, we are unable to discern any meaningful difference between the procedural due process

claims advanced by the plaintiff in this case and by the plaintiff in *Skinner*. At bottom, Wade's claim appears to be that the Pennsylvania post-conviction DNA statute, as construed by the Pennsylvania courts, is fundamentally unfair and constitutionally inadequate to vindicate the substantive rights provided to him under state law. *See Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009); *Grier v. Klem*, 591 F.3d 672, 679 (3d Cir. 2010); *see also Osborne*, 557 U.S. at 68 (holding that a prisoner may retain a state-created "liberty interest in demonstrating his innocence with new evidence under state law"). In particular, Wade's challenge appears to focus on statutory limitations with respect to post-conviction DNA motions involving new or improved DNA testing technology and with respect to cases in which trial counsel failed to request DNA testing at the time of trial.

Accordingly, the defendants' motion must be denied to the extent it seeks dismissal of this action for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

## B. Statute of Limitations

The defendants have moved for summary judgment on the ground that Wade's claims are barred by the applicable statute of limitations.

Federal civil rights claims under 42 U.S.C. § 1983 are subject to Pennsylvania's two-year statute of limitations applicable to personal injury actions. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78–79 (3d Cir. 1989); *see also* 42 Pa. Cons. Stat. Ann. § 5524. The date when a § 1983 action accrues, however, is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). As the defendants have noted in their brief, "[a]lmost every Court that has considered this issue has ruled that the statute of limitations on section 1983 claims based on denial of [the] right to access modern DNA testing begins to run at the end of the state litigation in which an inmate unsuccessfully sought access to such testing." *Wagner v. Dist. Attorney of Allegheny Cty., Pa.*, Civil Action No. 11-762, 2012 WL 2090093, at *6 (M.D. Pa. May 21, 2012) (collecting cases), *report and recommendation adopted by* 2012 WL 2089799 (M.D. Pa. June 8, 2012); *cf. Giles v. City of Philadelphia*, 542 Fed. App'x 121, 123 (3d Cir. 2013) (finding § 1983 claim for city's refusal to produce atomic absorption test results accrued upon dismissal of administrative appeal to state court).

The complaint in this action was filed on March 24, 2015. The defendant points to the Superior Court's March 20, 2013, decision affirming the trial court's denial of Wade's third motion for DNA testing

and argues that the complaint was untimely filed. But Wade filed a timely petition for allocatur with the Supreme Court of Pennsylvania, which was not denied until November 15, 2013. Moreover, Wade had an additional ninety days from that date—*i.e.*, until February 13, 2014—to file a petition for a writ of certiorari in the Supreme Court of the United States. *See Wagner*, 2012 WL 2090093, at *6. Thus, February 13, 2014, was the last possible date in the state litigation in which Wade sought access to DNA testing, and Wade had until two years later—February 13, 2016—to file a timely § 1983 action. *See id.* Wade filed this action more than eleven months before the two-year limitation period expired.[4]

Accordingly, the defendants' motion must be denied to the extent it seeks summary judgment on the ground that the plaintiff's claims are barred by the applicable statute of limitations.

## C. Immunity Defenses

The defendants have moved for summary judgment on the ground that they are immune from liability. First, they contend that they are

---

[4] Even if the 90-day period for seeking certiorari from the United States Supreme Court is not considered, Wade filed this action less than two years after the state litigation ended on November 15, 2013, when the Supreme Court of Pennsylvania denied his petition for allocatur.

entitled to absolute prosecutorial immunity. In the alternative, they contend that they are entitled to qualified immunity.

A prosecutor is entitled to absolute immunity from § 1983 liability for his quasi-judicial acts, which are acts undertaken "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). However, a prosecutor enjoys only qualified immunity for his "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Id.*

But the plaintiff here has not asserted a claim for monetary damages. In its ad damnum clause, the complaint seeks injunctive relief— an order directing that the defendants release certain physical evidence to the plaintiff for DNA testing, and that they cooperate with him in selecting a qualified laboratory to conduct the testing (or that the Court designate a particular laboratory). (Doc. 1, at 17). Other than this injunctive relief, the ad damnum clause seeks only "[r]easonable attorney fees and costs" and "[a]ny other relief that this Court deems just and proper." (*Id.*). There is no explicit demand for an award of monetary damages, and the complaint's

boilerplate request for "other relief" cannot be construed as such. *See Lewis v. Hyland*, 554 F.2d 93, 103 (3d Cir. 1977); *Pa. Cty. Risk Pool v. Northland Ins.*, Civil Action No. 1:07-cv-00898, 2009 WL 506369, at *9 (M.D. Pa. Feb. 27, 2009) (finding a prayer for 'additional or alternative relief' "is not a claim for damages, but an inchoate demand, the purposes of which are, first, to allow revision of a prayer for relief in light of facts later adduced and, second, to permit a court to fashion some form of relief, initially unspecified, in the course of an action"). Nor may the demand for reasonable attorney fees and costs be construed as a claim for damages. *Northland Ins.*, 2009 WL 506369, at *10.

While prosecutorial immunity may render the defendants immune from monetary liability, that doctrine is not a defense to claims for injunctive relief. *Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 736–37 (1980). Similarly, "the defense of qualified immunity is available only for damages claims—not for claims requesting prospective injunctive relief." *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006).

Accordingly, the defendants' motion must be denied to the extent it seeks summary judgment on grounds of absolute prosecutorial immunity

or qualified immunity.

### D. *Heck v. Humhprey*

The defendants also argue that Wade's claims are "at least partially barred" by the favorable termination rule articulated by the Supreme Court of the United States in *Heck v. Humphrey*, 51 U.S. 477 (1994). The defendants acknowledge that, in *Grier v. Klem*, 591 F.3d 672 (3d Cir. 2010), the Third Circuit held that "in the narrow circumstance where a prisoner files a § 1983 claim to request access to evidence for DNA testing, that claim is not barred by the principles outlined in *Heck*." *Id.* at 678. We, of course, are bound by the Third Circuit's holding in *Grier*.[5]

Notwithstanding the *Grier* holding, the defendants argue that *Heck* still bars monetary claims against the defendants to the extent Wade intends to pursue a claim for monetary damages. But, as noted above, Wade has not pleaded a claim for monetary damages. *See Lewis*, 554 F.2d at 103; *Northland Ins.*, 2009 WL 506369, at *9–*10.

Accordingly, the defendants' motion must be denied to the extent it seeks summary judgment on the ground that the plaintiff's claims are

---

[5] The defendants have noted a circuit split on this issue, and they have suggested in their brief that they may ask the Third Circuit to reconsider its holding in *Grier* in light of this split of authority.

barred by the favorable termination rule articulated in *Heck v. Humphrey*, 51 U.S. 477 (1994).

### E. *Sua Sponte* Dismissal of Counts III, IV, and V

We have reviewed the plaintiff's claims and find several to be patently meritless, and we therefore find it appropriate to dismiss these claims *sua sponte* for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

#### 1. *Count III: Substantive Due Process*

In Count III, Wade claims that, in refusing to release the physical evidence to him for DNA analysis, the defendants have denied him an opportunity to conclusively prove his actual innocence of the offenses for which he was convicted, a violation of his substantive due process rights under the Fourteenth Amendment. But it is well established that there is no substantive due process right to access DNA evidence. *Osborne*, 557 U.S. at 72; *Bonner v. Montgomery Cty.*, 458 Fed. App'x 135, 136–37 (3d Cir. 2012); *Grier*, 591 F.3d at 678.

Accordingly, Count III must be dismissed for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

#### 2. *Count IV: Confrontation and Compulsory Process*

In Count IV, Wade claims that the defendants' refusal to release the

physical evidence to him for DNA analysis violated his rights under the Confrontation and Compulsory Process Clauses of the Sixth Amendment. But neither the Confrontation Clause nor the Compulsory Process Clause applies to state post-conviction proceedings. *Oken v. Warden, MSP*, 233 F.3d 86, 92–93 (1st Cir. 2000) (confrontation and compulsory process); *see also Castillo-Hernandez v. Holder*, 596 Fed. App'x 645, 651 (10th Cir. 2014) (confrontation); *Rishton v. Chapman*, No. 2:12-cv-397-JRG-MCLC, 2015 WL 5749428, at *16 (E.D. Tenn. Sept. 30, 2015) (compulsory process); *Williams v. McCulloch*, No. 4:15CV00070 RWS, 2015 WL 222170, at *3 (E.D. Mo. Jan. 14, 2015) (compulsory process).

Accordingly, Count IV must be dismissed for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

### 3. Count V: Cruel and Unusual Punishment

In Count V, Wade claims that the defendants' refusal to release the physical evidence to him for DNA analysis constituted cruel and unusual punishment in violation of his rights under the Eighth Amendment. But the defendants' refusal to release the evidence or conduct DNA testing on it is not a "punishment" proscribed by the Eighth Amendment. *Williams*, 2015 WL 222170, at *3. There is simply no Eighth Amendment right to

compel the disclosure of evidence for post-conviction DNA testing. *See Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1265 (11th Cir. 2012); *McKithen v. Brown*, 626 F.3d 143, 156 (2d Cir. 2010);

Accordingly, Count V must be dismissed for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

### 4. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, it is clear from the facts alleged in the complaint that further amendment with respect to the dismissed claims would be futile. Therefore, Counts III, IV, and V of the complaint will be dismissed *without* leave to amend.

## V.   CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 20) will be denied, and Counts III, IV, and V of the

complaint (Doc. 1) will be dismissed *sua sponte* for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1), without leave to amend.

An appropriate order will follow.

Dated: September 29, 2017

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge